IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

FILED
2016 MAR 31 AM 9:59
U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | | |
|---|---|---|
| APOLINAR RAMIREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-13-CV-44-MAT |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

### I. PROCEDURAL HISTORY

On February 2, 2010, Plaintiff filed an application for DIB in which he alleged disability

beginning August 21, 2009[1] due to back pain, seizures, gastritis, heart problems, left leg problems, and arthritis. (R. 154, 192-193).[2] Plaintiff was 53 years old at the time of filing. (R. 154). He has a high school diploma. (R. 35, 193). He has previous work experience as a handyman, a moving packer, a working supervisor, a security guard, a laborer doing yard work, a yard work contractor, a construction worker, and a houseman. (R. 49, 194).

After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 56-59, 66-70). On October 18, 2011, Plaintiff appeared for a hearing. (R. 31-52). On December 23, 2011, the ALJ issued a written decision denying benefits on the ground that Plaintiff is able to perform his past relevant work as a security guard, and therefore, is not disabled. (R. 16-26). On December 17, 2012, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1-3).

## II. ISSUES PRESENTED

Plaintiff presents two issues for review: (1) whether the ALJ erred in finding Plaintiff's seizure disorder does not meet or equal Listing 11.02 and/or 11.03 ; and, (2) whether the ALJ's residual functional capacity ("RFC") assessment is supported by substantial evidence.

## III. DISCUSSION

### A. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final

---

[1] According to the transcript, Plaintiff filed a previous application for DIB which was denied in October 2008. (R. 187-188).

[2] Reference to the record of administrative proceedings is designated by (R.[page number(s)]).

decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently

engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Id.*

C. The ALJ's Decision

In her written decision, the ALJ determined as a threshold matter that Plaintiff met the insured status requirements of the Social Security Act through September 20, 2012. (R. 18). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 21, 2009,

the alleged onset date.[3] *Id.* At step two, the ALJ determined Plaintiff has severe impairments consisting of seizure disorder, hypertension, and degenerative disc disease of the lumbar spine. *Id.* The ALJ further determined Plaintiff's impairments of gastritis and anxiety disorder are non-severe. (R. 19). At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20).

Before reaching step four, the ALJ assessed Plaintiff's RFC and found he is able to perform a wide range of light work[4] with the following limitations. He can occasionally climb stairs and/or ramps, balance, stoop, crouch, kneel, and crawl; but should never climb ladders, ropes, or scaffolds; should avoid working around unprotected heights, hazardous machinery, and open flames; and, should avoid concentrated exposure to extreme temperatures. (R. 21). In making this RFC assessment, the ALJ determined Plaintiff was not credible. (R. 22, 24-25). The ALJ specifically found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (R. 22).

At step four, the ALJ found that Plaintiff was to perform his past relevant work as a security guard. (R. 26). Thus, the ALJ concluded at step four that Plaintiff is not disabled. *Id.*

---

[3] The ALJ noted the record reflected earnings during 2009 and 2010, but the amount did not rise to the level of substantial gainful activity. (R. 18). Plaintiff testified he did not currently work, but then stated he had done some construction contracting work a few days earlier. (R. 18, 38).

[4] Light work is defined in the regulations as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

D. Analysis of Plaintiff's Claims

1. ALJ Properly Found Plaintiff's Seizure Disorder Did Not Meet the Listings

Plaintiff contends the ALJ erred in finding his seizure disorder does not meet or equal the severity of Listing 11.02 and/or 11.03. Plaintiff cites *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), for the proposition that the ALJ is required at step three to discuss the evidence offered in support of a disability claim and explain why the claimant is not found disabled at that step. Plaintiff contends the ALJ erred by relying only on the opinions of the State agency physicians to find Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria of any listed impairment. Plaintiff further claims the evidence of record shows he meets the criteria of Listings 11.02 and/or 11.03.

In analyzing Plaintiff's claim, the Court looks to the regulations governing the third step of the sequential evaluation. At the third step, the ALJ determines whether the medical evidence meets or equals the criteria of a listed impairment in Appendix 1 of the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). The Listing of Impairments describes conditions and impairments that are sufficiently severe to prevent an individual from engaging in *any* gainful activity, not just "substantial gainful activity," regardless of age, education or work experience. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Plaintiff is automatically entitled to benefits if his impairment meets or medically equals the criteria of one of the listed impairments in Appendix 1 to Subpart P of Part 404. 20 C.F.R. §§ 404.1520(d), 416.920(d). Because the Listings were designed to operate as a presumption of disability that makes further inquiry unnecessary, the medical criteria of the Listings are more restrictive than the statutory

disability standard. *Sullivan*, 493 U.S. at 532.

The burden of proof rests with Plaintiff to provide and identify medical signs and laboratory findings that support all criteria of a listed impairment. *Zebley*, 493 U.S. at 530; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). The listings criteria are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). A mere diagnosis of a condition will not suffice. "For a claimant to show that his impairment matches a listing, it must meet all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

In reaching her decision, the ALJ did not mention Listings 11.02 or 11.03 or any other specific Listings. This omission alone, however, is not reversible error. In *Audler*, the Fifth Circuit found the ALJ's summary conclusion–that the medical evidence indicated that claimant's impairments, while severe, were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P– to be beyond meaningful judicial review because the ALJ offered nothing to support her conclusion at step three. *Audler*, 501 F. 3d at 448. The appellate court made clear, however, that an exhaustive point by point discussion is not required. *Id.* Further, any error in the sufficiency of the discussion at step three is subject to a harmless error analysis. *Id.* The *Audler* court found the error was not harmless in that case because a diagnostic checklist indicated the claimant met the criteria of a listing, and there was no medical evidence to the contrary. *Id.*

The Listings provide that the degree of impairment in epilepsy, regardless of the etiology, is determined according to the type, frequency, duration and sequelae of seizures. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.00 (A). At least one detailed description of a typical seizure is required. *Id.*

7

Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available. *Id.* The criteria of these listings can be applied only if the impairment persists despite the fact the claimant is following prescribed antiepileptic treatment. *Id.* Whether the claimant is adhering to prescribed antiepileptic treatment ordinarily can be determined from objective clinical findings in the report of the doctor currently providing treatment for epilepsy. *Id.* Serum blood levels of antiepileptic drugs may also indicate whether the medication is being taken by the claimant. *Id.*

To be found disabled under the provisions of Listing 11.02, Plaintiff was required to establish the presence of:

> *Epilepsy--convulsive epilepsy (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.* With:
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.02.

To be found disabled under the provisions of Listing 11.03, Plaintiff was required to establish the presence of:

> *Epilepsy--nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postical manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.03.

According to Social Security Ruling ("SSR") 87-6, situations where seizures are not under

good control are usually due to the individual's noncompliance with the prescribed treatment, rather than the ineffectiveness of the treatment itself. When seizures are alleged to be occurring at a disabling frequency, the following are essential to a sound determination:

> (1) An ongoing relationship with a treatment source. The file must contain adequate information about the history of the treatment regimen and the claimant's response to it. In the absence of an ongoing treatment relationship, the impairment cannot be found to meet or equal the listings for epilepsy.
> (2) There must be a satisfactory description by the treating physician of the treating regimen and response, in addition to corroboration of the nature and frequency of seizures, to permit an informed judgment on impairment severity.
> (3) In every instance, the record of anticonvulsant blood levels is required before a claim can be allowed.

SSR 87-6, *Titles II and XVI: The Role of Prescribed Treatment in the Evaluation of Epilepsy*, 1987 WL 109184 (Jan. 1, 1987).

In support of his claim that he meets Listings 11.02 and/or 11.03, Plaintiff relies on his testimony and reports regarding seizure frequency and seizure activity, as well as objective medical evidence of diagnoses of seizure disorder and prescribed anti-epileptic medication. (R. 41, 192, 228, 263, 285, 287, 364, 373, 449, 456, 473, 744, 812, 816, 833). Plaintiff also points to evidence that shows he experienced seizures during October and November 2009, January through March 2010, June, July, September, and October 2010, and, January and February 2011; his seizures became more frequent; and, his dosage of anti-epileptic medication was increased. (R. 293, 357, 389, 408, 430, 431, 451, 456, 485, 565, 582, 812, 830, 832, 833, 836). Finally, he relies on a form completed by his neurologist, Dr. Steven Glusman, that states Plaintiff has intractable epilepsy and should not drive. (R. 839).

In this case, the ALJ discussed the evidence related to Plaintiff's seizure disorder and provided specific reasons to support her determination that this impairment was not of listing-level

severity. As noted by the ALJ, Plaintiff presented to the emergency room on September 27, 2009 with his first report of seizure episodes (one that morning and one within the two previous weeks), with no prior history. (R. 22, 312-313). The neurological examination and diagnostic data, however, were normal, as was the CT scan of his brain. (R. 22, 312-313, 324). An examination performed the following day by neurologist Steven Glusman, M.D. was also relatively normal. (R. 22, 314-316). Additionally, an MRI of his brain performed on September 28, 2009 was unremarkable, and an electroencephalogram ("EEG") performed on September 30, 2009 was normal. (R. 22, 325-326, 332-333). An electrophysiological study performed on October 23, 2009 was normal. (R. 22, 284-287).

On January 13, 2010, Plaintiff complained of recurrent dizziness, syncope[5], and seizure activities, but he also reported that he was not taking any anticonvulsant medication. (R. 431). On January 15, 2010, Plaintiff underwent a procedure to implant an event monitor to further evaluate his condition, in particular, to rule out cardiac arrhythmias as the cause of his reported syncope and seizure activities. (R. 291-295).

On June 3, 2010, Plaintiff was taken by ambulance to the emergency room for a suspected seizure that was witnessed by his wife. (R. 22, 582). Again, diagnostic testing, including a CT scan of Plaintiff's brain, was essentially unremarkable. (R. 22, 565-595). An EEG performed on July 27, 2010 showed no focal slowing, amplitude suppression, or paroxysmal activity suggestive of seizures. (R. 23, 488).

Although on October 18, 2010, Plaintiff reported his seizures were becoming more frequent,

---

[5] Syncope is defined as a temporary suspension of consciousness due to generalized cerebral ischemia; a faint or swoon. DORLAND'S ILLUS. MEDICAL DICTIONARY 1747 (29th ed. 2000).

the implantable event monitor showed no arrthymias. (R. 23, 812 ). He was referred to a neurologist for evaluation and advised to return in 3 months. (R. 23, 812). At the follow up visit on February 23, 2011, Plaintiff reported no new symptoms since his last visit. He complained of weakness, but no seizure activity. (R. 23, 811).

On March 1, 2011, however, Plaintiff reported he was having seizures four times a week, with the last seizure occurring on February 27, 2011. (R. 833). An EEG study was performed on March 4, 2011, during which Plaintiff was monitored over a 24-hour period. (R. 835-836). While the study suggested Plaintiff may have an increased tendency for seizures and possible multiple seizure foci, Dr. Glusman saw no actual clinical or electrographic seizures occur during the study. (R. 22, 836).

Both Listing 11.02 and 11.03 require at least one detailed description of typical seizure that includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with seizure and postictal phenomena. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(A). In this case, no medical provider ever witnessed any of Plaintiff's seizures or provided corroboration of the nature and frequency of Plaintiff's seizures, and the record does not contain the required detailed description of Plaintiff's typical seizure.[6] Plaintiff relies on his own statements that he had seizures up to four times per week. The record contains no evidence to corroborate his allegations of the nature and frequency of seizures. Additionally, there is not adequate evidence regarding his treatment regimen and response. The record does not contain the required evidence of his serum drug levels. As noted by the ALJ, the record does not appear to contain any laboratory report that confirms

---

[6] Although Plaintiff's wife allegedly witnessed a seizure on June 3, 2010, there is no detailed report in the record regarding the details of the seizure activity.

11

Plaintiff was receiving any therapeutic value from his prescribed anticonvulsant medication. (R. 23). Thus, Plaintiff can not show he suffered seizures at the required frequency in spite of at least 3 months of prescribed treatment in order to satisfy either of the relevant Listings.

In conclusion, the medical evidence supports the ALJ's finding that Plaintiff's diagnosed seizure disorder does not meet all of the demanding and stringent criteria of Listings 11.02 or 11.03. *Zebley*, 493 U.S. at 530 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Accordingly, there is no prejudice shown from the ALJ's failure at step three to identify the listings considered. The Court finds no error on this ground.

### 2. RFC Assessment is Supported by Substantial Evidence

Plaintiff contends the ALJ's assessment of his RFC is not supported by substantial evidence because the ALJ did not mention or consider the limiting effects of his obesity in accordance with the requirements of SSR 02-1p.[7] For the reasons below, the Court finds this argument is without merit.

RFC is defined as the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545; SSR 96-8p[8]. The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley*, 67 F.3d at 557. In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite his physical and mental limitations. 20 C.F.R. § 404.1545. The ALJ must consider the limiting effects of Plaintiff's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative

---

[7] SSR 02-1p, *Titles II and XVI: Evaluation of Obesity*, 2002 WL 34686281 (Sept. 12, 2002).

[8] SSR 96-8p, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184 (July 2, 1996).

weight to be given to the evidence is within the ALJ's discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)). The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Social Security Ruling 02-1p provides guidance for evaluating obesity in disability claims. Although there is no longer a specific listing for obesity[9], SSR 02-1p directs that obesity be considered in determining whether: (1) the individual has a medically determinable impairment; (2) the individual's impairment(s) is severe; (3) the individual's impairment(s) meet s or equals the requirements of a listed impairment in the Listings; and, (4) the individual's impairment(s) prevents him from doing past relevant work and other work. *Id.* at *3. The ruling reminds ALJs that obesity can cause limitation of function, and its combined effects with other impairments (particularly musculoskeletal, respiratory and cardiovascular) may be greater than might be expected without obesity. *Id.* at *5-6. It also states that assumptions are not to be made about the severity or functional effects of obesity combined with other impairments, as obesity may or may not increase the severity or functional limitations of the other impairment. *Id.* at *6. Each case is to be evaluated based on the information in the case record. *Id.*

Plaintiff is correct that the ALJ did not cite or discuss SSR 02-1p. Any procedural error made in the consideration of Plaintiff's obesity, however, requires remand only when a reviewing court concludes that the error is not harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

---

[9] On October 25, 1999, obesity (formerly listed at 9.09) was deleted from the Listing of Impairments because it was determined that the criteria in the listing did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity. SSR 02-01p, 2002 WL 34686281, at *1.

"Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Id.* "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.' " *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

Plaintiff does not explain how his obesity results in functional limitations that would prevent him from performing his past relevant work as a security guard. Rather, Plaintiff relies on his subjective complaints of fatigue, sleep problems, depression and anxiety, as well as diagnoses of insomnia, anxiety, chronic lower back pain, arthralgia, and lumbar spinal stenosis. Plaintiff also cites to his allegations and reports of experiencing pain in his back, knee problems, swelling in his legs, and breathing problems. He does not, however, cite to any evidence that any of these conditions are related to or made worse by his obesity. Rather, Plaintiff's argument is couched in terms of how obesity **might** affect an individual's ability to work. As stated in SSR 02-1p, assumptions **are not** to be made about the severity or functional effects of obesity combined with other impairments, as obesity **may or may not** increase the severity or functional limitations of the other impairment. SSR 02-1p, 2002 WL 34686281, at *5-6 (emphases added).

As for Plaintiff's reliance on his subjective complaints, the ALJ found him to be less than credible. In reaching this conclusion, she noted many inconsistencies in his testimony. The ALJ noted his testimony about his alleged mental limitations was unsupported by the record and exaggerated his symptoms. (R. 25). She also noted that although Plaintiff stated he gets frequent headaches, has cirrhosis, and his doctor recommended a CPAP machine for shortness of breath, the record contained no evidence that he had sought treatment for these conditions. *Id.* She also noted

the hearing had to be temporarily stopped because Plaintiff stated his pacemaker was shocking him, but the record was not clear whether Plaintiff actually had a pacemaker, as he claimed, or simply a heart monitor. *Id.* The ALJ observed Plaintiff's daily activities were inconsistent with his claim of disability. *Id.* Finally, the ALJ opined that Plaintiff's activities of driving and looking for work as a roofer are wholly inconsistent with his allegations of experiencing 20 seizures per month. (R. 24). Assessment of credibility is the province of the ALJ, and her credibility determination is entitled to great deference. *Greenspan*, 38 F.3d at 237; *Newton*, 209 F.3d at 459.

As acknowledged by the ALJ, the record shows Plaintiff applied for disability based on back pain, seizure disorder, gastritis, heart problems, left leg problems, and arthritis. (R. 22, 154, 192-193). He did not allege any functional limitations based on obesity. At the hearing before the ALJ, Plaintiff testified he is 5 feet 8 inches tall and weighs 230 pounds. (R. 38). He testified the problems that prevent him from working include seizure disorder, gastritis, headaches, cirrhosis, unspecified heart problems, spinal stenosis, knee pain, fatigue, depression, and back pain.[10] (R. 40-44). He did not testify to any limitations specifically related to his obesity. Plaintiff does not cite to any physician-imposed limitations that were not considered by the ALJ. In fact, the ALJ noted that "[n]o doctor has placed any limitations on his functional abilities." (R. 25). To the contrary, the record shows an exercise program was prescribed for him on June 30, 2010 by Dr. Shanker Sundrani. (R. 451).

The record does not support Plaintiff's contention that the ALJ improperly assessed his RFC.

---

[10] As stated earlier, the ALJ noted there was no evidence in the record that Plaintiff had been treated for all of these alleged conditions. (R. 25).

15

The ALJ assessed Plaintiff's RFC "[a]fter careful consideration of the entire record." (R. 21). Simply stated, the evidence cited by Plaintiff does not support the need for further limitations in his RFC than those assessed by the ALJ. Thus, there is no indication that a discussion of SSR 02-1p "could and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728 (citing *Kane*, 731 F.2d at 1220).

It is the task of the ALJ to weigh the evidence. *Chambliss*, 269 F.3d at 523. It is the task of this Court to determine if there is substantial evidence in the record as a whole to support the ALJ's decision. *Id.* (citing *Greenspan*, 38 F.3d at 240). As substantial evidence supports the ALJ's decision, it must be affirmed. *Spellman*, 1 F.3d at 360.

## CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, AFFIRMED.

SIGNED and ENTERED this 31st day of March, 2016.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

16